(Decided 18th October, 1893.)

WILLIAM McNIECE *vs.* THOMAS W. ELIASON, JR., SAME *vs.* SAME.

*Creditors' bill—Mortgage—General creditors of Deceased mortgagor—Right to Redeem—Final order—Tender—Secs. 27 and 28 of Art. 5 of the Code.*

A creditors' bill filed by a general creditor, and making a mortgagee of the deceased debtor defendant, sought to secure a sale of the mortgaged real estate for the benefit of all the creditors, after paying the mortgage debt. The bill prayed that the mortgagee be required to accept the mortgage debt and the complainant be allowed to pay the same. To this bill the defendant mortgagee demurred on the ground that the complainant, being only a general creditor, had no legal right to redeem or pay off the mortgage debt, and be subrogated to the rights of the mortgagee. HELD:

That the order sustaining the demurrer was final, from which an appeal would lie, although the bill was not dismissed, since to have proceeded further with the bill would have been fruitless.

McNiece *vs.* Eliason.

Although under section 188 of Article 16 of the Code, the land of a decedent is contingently or conditionally liable to be sold for the payment of his debts, a general creditor has no such right to, interest in, or lien on the decedent's real estate, as to give him the right to redeem a mortgage upon such real estate, and be subrogated to the rights of the mortgagee.

Where the mortgagee has filed his bond and advertised the property under the mortgage, the administrators of the deceased mortgagor, in order to prevent a sale of the real estate under the mortgage, must, in addition to the mortgage debt and interest, tender the legal costs incurred.

A mortgagee who has filed his bond and advertised the property for sale under his mortgage before the institution of a creditors' suit to subject the property to the payment of the debts of the deceased mortgagor, is not prevented from proceeding with the sale, after an injunction granted to restrain the sale has been dissolved, and the creditor's bill dismissed, by an appeal on the part of the creditors, they having failed to give bond as required by sections 27 and 28 of Article 5 of the Code.

APPEALS from the Circuit Court for Kent County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, McSHERRY, BOYD, and BRISCOE, J.

*Harrison W. Vickers,* (with whom was *Hope H. Barroll,* on the brief,) for the appellant.

*Story's Jurisprudence on the Law of England and America, sec.* 1023, on the subject of redemption, lays down the law, that "it is clear that the equity of redemption is not only a subsisting estate and interest in the land in the hands of the heirs, devisees, assignees and representatives of the mortgagor, but is also in the hands of any other persons, who have *acquired any interest in the lands mortgaged by operation of law, or other-*

*wise,* in privity of title. Such persons have a clear right to disengage the property from all incumbrances, in order to make their own claims *beneficial* or *available.* Hence a tenant for life, a tenant by the curtesy, a jointress, a tenant in dower in some cases, a reversioner, a remainderman, a judgment creditor, a tenant by *elegit, and, indeed, every other person, being an incumbrancer,* or having legal or equitable title or lien therein, may insist upon a redemption of the mortgage, in order to the *due enforcement* of their claims and interest respectively in the land." See *Coke upon Littleton,* 208; *Earl of Kinnoul vs. Money,* 3 *Swanston,* 203.

The Statute 5 Geo. II, ch. 7, sec. 4, in express language declares that the lands in America "shall be liable to and chargeable with *all just debts, duties and demands of what nature or kind soever,*" etc. "And shall and may be assets for the satisfaction thereof, in like manner as real estates are by the law of England liable to the satisfaction of *debts due by bond* or *other specialty,* and shall be subject to the like remedies," etc., in law or equity.

In *Williams on Real Property,* the law is stated as follows: "It may be said that as a general rule, in the United States, lands are liable for the debts of a decedent, whether due by matter of record, *specialty* or *simple* contract. In the *two latter cases,* the existence of the debt creates *no lien* during the debtor's *life.* By his death, however, its *quality is changed,* and it *becomes a lien* upon his real estate which descends to the heir or passes to the devisee, subject to the payment of all the debts of the ancestor," etc. *Williams on Real Property,* (*6th Ed.,*) 82; *Morris, Lessee vs. Smith,* 1 *Yeates,* 244; 4 *Kent Com.,* 420.

The Act of 1785, sec. 188, Art. 16, of the Code, subjects and binds the real estate of a deceased debtor, for the payment of his debts, the personal estate not being

McNiece *vs.* Eliason.

sufficient, and the Court on *any suit by any creditor* may decree the real estate to be sold.

The appellee in equity and fairness should have accepted his debt with the interest when tendered, leaving for the determination of the Court the disputed question of costs, expenses and commissions. In *Dayton vs. Dayton,* 68 *Mich.,* 437, it is said "Where a bill is filed for the discharge of a mortgage on the ground of a tender of the amount due, which tender is found to have been insufficient, the bill may *be retained* as a bill to redeem under the general prayer for relief, the complainant *offering* in his bill *to pay* whatever may *be found due* the defendant." *Millington vs. Fox,* 3 *Mylne & Cr.,* 352; *Adams' Equity,* 393; *Cliff vs. Wadsworth,* 2 *You. & Coll. C. C.,* 604; *Jenkins vs. Jones,* 2 *Giffard,* 99; *Kopper vs. Dyer,* 59 *Vt.,* 477; *Warner, et al. vs. Tuch, et al.,* 127 *N. Y.,* 217; *Cass vs. Higenbotam,* 100 *N. Y.,* 248; *Kortright vs. Cady,* 21 *N. Y.,* 342.

These New York authorities are on the point that a tender extinguishes the lien, leaving the debt unaffected, and that it is not necessary to keep the tender good or pay the money into Court. *Gage vs. Russell,* 2 *Ventris,* 352.

It is laid down as a standing rule of equity that a forfeiture should not bind when anything *can be done afterwards,* or any compensation can be made for it. Forfeitures are odious and Courts struggle against them.

*James A. Pearce,* (with whom was *Richard D. Hinson,* on the brief,) for the appellee.

That a general creditor has no right to redeem and demand to be subrogated to the rights of the mortgagee is well settled law, as he has no interest in the premises, nor is his claim a lien upon the real estate of a deceased debtor. *Wilson vs. Wilson,* 13 *Barb.,* 252. The right of subrogation depends upon the right to pay.

A mere volunteer without any authority undertaking to discharge a debt does not succeed to the rights of the party whose debt he discharges. *Hall, Adm'r vs. Cresswell, et al.,* 12 *G. & J.,* 36; *Swan vs. Patterson,* 7 *Md.,* 164. *Pomeroy* in his treatise on *Equity Jurisprudence,* (3 *vol., sec.* 1212,) says: "That the payment must be made by or on behalf of a person who had some interest in the premises or some claim against other parties which he is entitled in equity to have protected and secured." It is in the hands of any one who has acquired an interest in the lands mortgaged by operation of law or otherwise, in privity of title to redeem. 2 *Story's Eq. Jur., sec.* 1023. But no person except the mortgagor or his heirs or privies in estate has a right to redeem, unless it can be shown that there is collusion between them and the mortgagee. A mere annuitant of the mortgagor has no title to redeem, having no interest in the land. For the same reason, one who has merely a bond of conveyance from the mortgagor to convey the equity of redemption, but no conveyance thereof, cannot in his own name alone maintain a bill to redeem. 2 *Story's Eq. Jur., sec.* 1023. He must have not merely a *jus ad rem,* but a *jus in re.* *Grant vs. Duane,* 9 *John.,* 612; *Porter vs. Reed,* 1 *Appleton,* 363; *McDougald vs. Capron,* 7 *Gray,* 278. The Acts of Assembly making real estate responsible for debts, do not make these debts liens or even charges, but simply provide a remedy by which the land may be subjected to debts on insufficiency of the personal estate.

It creates no lien, nor does it give the general creditor any interest in the real estate of his deceased debtor. If the debtor was living, a judgment could be obtained against him by pursuing a certain course, and after death his real estate may be sold to aid the personal estate in payment of debts, under certain contingencies, by following the provisions of the Code, Art. 16, sec. 188.

As the general creditor had a right of action against his debtor in his life-time, so after death the Code simply gives him a right of action or remedy against the real estate, nor does it charge the payment of debts upon the real estate either expressly or by implication.

How then can it be said that a general creditor has such an interest in lands of his deceased debtor as to authorize him in paying the mortgage debt and thereby become entitled to subrogation? Clearly upon principle, no such right exists.

Granting, for the sake of argument, that a general creditor has the right to redeem, it certainly does not follow that the filing by McNiece of his said creditors' bill, operated in such a manner as to deprive the appellee from foreclosing under the power of sale. This power of sale is not a mere naked power, but it is a power coupled with an interest; it is a part of the security itself, is irrevocable and is not affected by the death of the mortgagor. *Berry vs. Skinner*, 30 *Md.*, 567; *Dill vs. Satterfield*, 34 *Md.*, 52; *Harnickell vs. Orndorff, Adm'r*, 35 *Md.*, 341; and the only way by which he can be deprived of this power is by payment of the mortgage debt and interest by the party having the right of redemption. The mortgage debt was overdue, and up to and at the time the defendant instituted the foreclosure proceeding by filing his bond and advertising, no tender was made, and not until the 31st of December, 1892, about four weeks after the foreclosure proceedings were begun, was any tender or offer to tender made, and then only the mortgage debt with its proper interest was tendered, (although a statement of costs incurred by the mortgagee, including one-half commissions was furnished appellant's solicitors,) which appellee refused to accept, as the whole amount of the debt, interest and costs were not tendered him.

A party undertaking to redeem must tender or pay the whole amount due. *Swan vs. Patterson*, 7 *Md.*, 164;

*Hollingsworth vs. Floyd,* 2 *H. & G.,* 87; *Stickney & Co. vs. Mohler, Graff & Co., et al.,* 19 *Md.,* 490, *&c.*

FOWLER, J., delivered the opinion of the Court.

The appellant, William McNiece, filed a creditors' bill in the Circuit Court for Kent County on the 30th November, 1892, suing for himself and all other creditors of Norris Bernard, deceased, in the usual form, making the administrators and heirs-at-law of the deceased debtor, and also Thomas W. Eliason, Jr., the appellee, parties defendant. The bill alleges that said Bernard was in his life-time indebted to the appellant, and other persons in large sums of money which were unsecured, and that there was an outstanding overdue mortgage which the said Bernard had executed to secure the payment of two single bills amounting to nine thousand dollars, and that by the terms of said mortgage the mortgagee, who is the appellee here, might at any time proceed to sell the real estate therein mentioned.

In order to prevent a sale, which the appellant alleges would result in injury to him and the other unsecured creditors of the mortgagor, he "tenders himself ready and willing to satisfy and pay unto the said mortgagee" the mortgage debt and interest, and asks that the mortgagee may be required to show cause why he should not accept the same, and he prays also that he may be subrogated to the rights of the mortgagee under the mortgage.

To this bill the appellee demurred on the ground that the appellant, being only a general creditor, he had no legal right to redeem or pay off the mortgage debt, and be subrogated to the rights of the mortgagee; and this demurrer was sustained by the Court below.

The first question, however, is presented by the motion to dismiss the appeal. This motion is based upon the ground that the order appealed from is not in its nature a final order. But we think it is clearly of that character.

The object of the bill was to secure a sale of the mortgaged real estate under the creditors' bill for the benefit of all the creditors, after paying the mortgage debt, and as a means to that end the prayer was that the mortgagee should be required to accept and that the appellant might be allowed to pay the same. In no other way could the object of the bill be attained.

For if the estate mentioned in the mortgage should be sold under the power therein contained, the bill might as well have been dismissed, because its main—indeed its whole object—was to secure a decree for a sale of said property. In a word, the appellant claimed the right to redeem and sell the land; but by the order appealed from it was declared that such right did not exist. It is true, this order does not in terms dismiss the bill, but that was its necessary result. It denied the relief sought, and there was no other course open to the appellant. *Hazlehurst vs. Morris, et al.,* 28 *Md.,* 71; *Waverly Mutual Building Asso. vs. Buck,* 64 *Md.,* 343. To proceed further with the creditors' bill, as was suggested by the appellee, would have altogether been fruitless, for in effect it had been finally decreed by the Court below that the appellee and not the appellant had the right to sell.

The motion to dismiss will, therefore be overruled.

Was the demurrer properly sustained? We think it was.

The questions presented by the demurrer to the creditors' bill, and by the pleadings in the injunction case (being two appeals argued before us by agreement of counsel) are first, whether the appellant, who is a general, unsecured creditor of the deceased mortgagor, has a legal right to redeem and be subrogated; and secondly, if so, has he properly exercised that right? The conclusion we have reached in regard to the first question renders it unnecessary to consider the second in regard to

the appellant, but we will presently consider it as applied to the administrators of the mortgagor.

There can be no doubt upon the general question here involved. The doctrine is thus expressed by Mr. *Pomeroy,* (*Equity Jurisprudence, sec.* 1212:) "The payment must be made by or on behalf of a person who has some interest in the premises, or some claim against other parties which he is entitled in equity to have protected." And in 2 *Story's Equity, section* 1023, we find a full statement of this principle. It is there said that the equity of redemption is not only an interest in the land in the hands of the heirs, devisees, assignees, and representatives of the mortgagor, but it is also in the hands of any other persons who have acquired any interest in the lands mortgaged, by operation of law, or otherwise in privity of title. All such persons, says Judge STORY, have a clear right to redeem in order to make their own claims beneficial.

He then proceeds to enumerate the various persons who may redeem, and concludes by awarding this right of redemption to "every person, being an encumbrancer or having a legal or equitable title or lien" in the mortgaged property.

It may be conceded that the appellant by virtue of the statute (Code, Art. 16, sec. 188,) has some kind of a lien or *quasi* lien, or as said in *Van Bibber vs. Reese,* 71 *Md.*, 608, 613, that the land of a decedent is under the express language of the Code contingently or conditionally liable to be sold for the payment of his debts.

The question here, however, is not whether some such statutory lien or conditional liability may or may not exist, but conceding its existence, as provided by the statute, is it such a right to, interest in or lien on the decedent's real estate as to give to a general creditor like the appellant a right to redemption and subrogation as here claimed by him?

Clearly not, we think, under the rule laid down by Mr. *Pomeroy* and Judge STORY, just quoted. All the illustrations given by the latter, as well as the general terms used by him, would seem to exclude the appellant, who is certainly not an encumbrancer within the ordinary meaning of that term, nor can he be said to have either a legal or equitable title or such an absolute lien as the law gives to a judgment creditor. Nor do we see why we should give to this provision of our Code such a strained and novel construction. For it is or may be conceded that the administrators, as personal representatives of the deceased debtor, have the right to redeem.

Indeed, it may be said that, having the personal property—the primary fund for the payment of debts—in their hands, they would, in cases where it would be proper to redeem, be the persons to exercise that right under the direction of the Orphans' Court. Being of opinion that the appellant, under the facts in this case, had no legal right to redeem, the demurrer was properly sustained, and the order appealed from will be affirmed.

In regard to the other appeal little need be said. A bill was filed in the Circuit Court for Kent County on the 31st December, 1892, by the appellant and the administrators of said Bernard, setting forth the proceedings on the creditors' bill, the demurrer to which we have just been considering, alleging that, notwithstanding the appellant as well as the said administrators had tendered to the appellee the mortgage debt and interest, and had paid the same into Court, yet the appellee, as mortgagee, had advertised, and was about to sell under his said mortgage. An injunction was prayed, and was subsequently issued by said Court, restraining the appellee from selling. This bill was answered by the appellee, and his defence is that neither the appellant nor

the administrators, nor the appellant and administrators jointly had the right to pay·off the mortgage debt, and thus destroy his right to exercise the power of sale under his mortgage.

We have already said in the other appeal that the appellant had·no such right, and that the administrators have.

The question here, however, is whether this right has been properly exercised by the administrators who are conceded to possess it.

Only the exact amount of the mortgage debt and interest was tendered. Before the appellee was made a party to the creditors' bill, he had filed his bond and advertised the property under his mortgage, and although a bill of the costs thus incurred was presented to the administrators, they did not include them in the amount tendered. If the tender had been made before any costs had been rightfully incurred by the mortgagee, the tender of the debt and interest would no doubt have been good; but, after filing the bond and advertisement of the property, the legal costs thereby incurred should have been included in the amount tendered. *Columbian Build. Asso. vs. Crump, et al.*, 42 *Md.*, 195; 4 *Amer. Eng. Encylo. of Law*, 321, *and notes*. The proper amount not having been tendered, the appellee was under no obligation to accept it. Our conclusion is that the injunction was properly dissolved, and the order appealed from in this case will also be affirmed.

It was suggested that the appellee could not properly proceed to exercise his power of sale, after the institution of the creditors' suit.

But when the bill in that case was filed he had already filed his bond and advertised, and as soon as the injunction was issued all his proceedings under his power of sale appear to have ceased, and he did not again proceed to sell under his mortgage until after the injunction had been dissolved, and the creditors' bill dismissed.

Eureka Fertilizer Co. *vs.* Balto. Copper, Smelt. & Roll. Co.

Being thus freed from the injunction, and being no longer a party to the creditors' bill, he re-advertised and sold.

If the appellant had desired to restrain the effect of the order dissolving the injunction and that dismissing the creditors' bill, he should have given bond as required by the Code, (Art. 5, sections 27 and 28.) But, no such bond having been given, and the Court having jurisdiction of the appellee having dismissed him, we can see no reason why he should not proceed to exercise the valuable power given him by the mortgage. We do not deem it necessary to determine in this case how far, and under what circumstances generally a Court of equity can control a mortgagee in the exercise of such a power after default of the mortgagor.

All we mean now to decide is, that there is nothing in the cases now before us to justify a Court of equity either in prohibiting or controlling this appellee in the exercise of such a power.

*Orders affirmed, with costs.*

(Decided 16th November, 1893.)