## CHESAPEAKE & POTOMAC TELEPHONE COMPANY OF BALTIMORE CITY *vs.* BOARD OF COUNTY COMMISSIONER OF ALLEGANY COUNTY, Sitting as a Board of Control and Review.

*General reassessment law; Act of 1910, Chapter 300. County Commissioners; as Board of Review. Appeals.*

Under Chapter 300 of the Acts of 1910 providing for a general revaluation and reassessment of property for the purpose of taxation, the Board of County Commissioners, sitting as the Board of Control and Review, are not acting in the discharge of their primary duties as County Commissioners.

p. 223

This act only provides for appeals from the decisions of the County Commissioners acting as a Board of Control and Review, in cases where the party complaining claims that he is not the owner of the property, or that the property is exempt.

p. 224

The act gives no right of appeal to the Circuit Courts on the ground that the value placed on the property by the Board of Control and Review is too high.

p. 224

Chapter 430 of the Act of 1910 granting appeals from the refusal of County Commissioners to abate assessments refers to existing assessments only and such as may properly be made by the County Commissioners from time to time, and not as to such as are made by them when acting as a Board of

Control and Review under the law for the general reassessment.                                                                    p. 225

The declaration in Chapter 430 of the Act of 1910, that its provisions do not apply to assessments made under the Act of 1896, Chapter 120 (the former general reassessment act), is to be construed to mean that its provisions do not apply to assessments under Chapter 300 of the Act of 1910 (the new or general reassessment act, just passed).                    p. 227

*Decided June 23rd, 1911.*

Appeal from the Circuit Court for Allegany County (HENDERSON, J.).

The cause was argued before BOYD, C. J., PEARCE, BURKE, URNER and STOCKBRIDGE, JJ.

*Shirley Carter,* for the appellant.

*Harry R. Donnelly,* for the appellees.

BOYD, C. J., delivered the opinion of the Court.

The appellant filed an appeal in the Circuit Court for Allegany County from what is alleged to be an exorbitant valuation and unlawful assessment of its wires and cables in Allegany county, and prayed that the increase in the valuation of the same as made by the County Commissioners of that county, sitting as a Board of Control and Review, be reviewed by that Court and abated or reduced. The petition alleges that the appellant returned all of its assessable property in the respective election districts and assessment districts of the county, and that the valuation set upon the wires and cables by it in its return was the full value of the same; that on January 6th, 1911, the appellees notified the appellant that they had increased the valuation as returned by it by doubling that so set upon its iron and copper wire, and aerial and underground cables; that it on the 9th day of January filed its appeal with the County

Commissioners, sitting as a Board of Control and Review, setting forth that the increase in valuation of its wires, etc., was not warranted by law, and prayed the Board of County Commissioners to abate the increase; that after a hearing they, sitting as a Board of Control and Review, notified petitioner that they had decided to leave the valuation as made by them.

The Circuit Court passed an order setting said petition and appeal down for hearing and directing a *subpoena duces tecum* to be issued to the County Commissioners, sitting as a Board of Control and Review, requiring them to produce the record of proceedings and all papers and documents in reference to the valuations and assessments appealed from.

The defendants demurred to the petition for the reasons:

1. That it did not allege that the property mentioned was exempt from assessment, valuation and taxation.

2. That it did not allege that it was not the property of the petitioner, and should not be assessed as such.

3. And for other reasons to be made known at the hearing.

The demurrer was sustained by a short entry to that effect on the docket, and the appeal was taken four days thereafter. The petition was not dismissed and no final disposition of the case was made, by entry of judgment for costs or otherwise. It was not a proceeding in equity, and hence it was not such a case as *McNiece* v. *Eliason,* 78 Md. 168, referred to by the appellant, but as there was no motion to dismiss the appeal, and the questions involved were fully argued, we will state our views on them, as we understand from the appellant's brief the ruling on the demurrer concludes the case.

We have no doubt that the lower Court was right in holding that there was no appeal to that Court on the grounds alleged in the petition. Chapter 300 of the Acts of 1910 is, "An Act to provide for the general revaluation and reassessment of property for purposes of taxation in all the counties of this State except Somerset and Worcester counties." Due provision is made by that act for assessment by the assessors

authorized to be appointed, and upon the completion of their work for the return of the assessments, schedules and returns filed with them as well as all books, documents, etc., to the County Commissioners of the respective counties, sitting as Boards of Control and Review. The members of the respective boards of control and review are required to take the oath set out in section 7 before entering upon their duties, which of itself indicates that they were not acting in the discharge of their ordinary duties as county commissioners.

By section 20 the Boards of County Commissioners, acting as Boards of Control and Review, are required to give notice of their meetings, and to proceed to consider the returns made by the assessors and to hear and determine the appeals authorized by section 16 (which are not applicable to this case). That section (20) specifies a number of duties and powers of the Boards of County Commissioners, acting as Boards of Control and Review, amongst others that they "shall have power to correct any valuation or assessment returned to them, respectively, whether any complaint or appeal has been made in relation thereto or not," and "shall have the power to increase any valuation so returned to them, respectively, in every case in which they shall deem it proper to make due increase," provided notice of such increase is given, etc.

Section 21 provides that each Board of Control and Review shall, with the aid of their clerks, enter and record in books to be printed for the purpose accurate and fair accounts of all the properties within their respective counties, which have been valued as provided. The said records shall show the name of each owner in each election district, the property valued to him, description of the properties, etc. Indices are required to be made, and the Boards of Control and Review were required to return the books and indices so prepared to the County Commissioners "not later than sixty days after they shall have respectively as Boards of Control and Review begun their work of reviewing the returns of

said assessors in the said counties," unless the Governor extended the time.

It then provides that "the owner of property or owner to whom property has been valued and who shall claim that the property so to him, her or it valued is not owned by him, her or it, or is exempt from valuation or assessment * * * may file a petition in the Circuit Court for that county in which the said property has been so valued, setting forth the facts of the said case and the ground upon which said exemption is claimed or denying all said ownership." It then provides for a hearing by the Court and for the Court determining "whether the said property, so valued to the said owner, is or is not subject to such valuation and assessment, or ought not to be valued to said alleged owner," etc. Section 22 provides for cases where property not exempted has not been valued, and section 23 provides for appeals to this Court by parties to the proceedings mentioned in sections 21 and 22, and that on such appeals the original papers be transmitted.

It is, therefore, perfectly clear that the only appeals to the Circuit Courts under section 21, which alone provides for appeals by the owners of property to the Court, are on the grounds either that the party to whom it is assessed is *not the owner* or that the property *is exempt*. That act does not in any way suggest the right of any one to appeal to the Court on the ground that the valuation is too high, but on the contrary it does just what prior general assessment laws have done, leaves the valuation of the property to the assessors, subject to the review of the Board of Control and Review. It would undoubtedly greatly and unnecessarily add to the labors of the Courts if they had the power and were required to review valuations when general assessments were made, but so far as we are aware that has never been attempted by the legislature of this State. In most cases it could perhaps be more satisfactorily done by business men than by judges.

But it is contended that Chapter 430 of the Acts of 1910 gives such right of appeal. We can not, however, agree with that contention. It is true that that act was approved by the Governor four days after Chapter 300, but it is perfectly manifest that it was not intended to make the Circuit Courts Boards of Control and Review, and this Court the final board, to determine valuations of properties made under the general assessment contemplated by Chapter 300 or any other general assessment law. It would be impracticable, if not impossible, for the Courts to so act and attend to their regular duties and the various provisions of Chapter 300 negative such an idea. In the first place we have seen what are the grounds upon which an interested party can go into Court, and there is no suggestion of the right of appeal on account of the valuation, but it is excluded as effectually as if it had in terms been denied. The Circuit Courts could have no possible right to review and change such valuation unless the statute in express terms or by necessary implication conferred such right, and that has not been done. In thus speaking of it we are leaving out of consideration the question whether the Legislature could require the judges of those Courts to perform such services.

The assessments made under Chapter 300 (and those involved in this case were) are first made by the assessors and then are subject to review by the Board of Control and Review. When the latter complete their work, in other words, when all the property in the county has been assessed, or is supposed to be, they turn the books, etc., showing the amount of the assessment on each property, with the names of the respective owners, etc., over to the county commissioners, and although the same individuals compose the two boards their duties are as separate and distinct in the respective capacities in which they act, as if they were different individuals. The county commissioners, *as such,* take no part in fixing the valuations on the properties in the county, and it is only after the assessment is completed and the

books are turned over to them that they have anything to do with the assessment, beyond the appointment of assessors, etc.

The petition in this case shows that the increase in the valuation was made by the county commissioners, sitting as a Board of Control and Review, and the appeal taken by the appellant was to the board acting in the same capacity.

Chapter 430 of the Acts of 1910, added section 17A to Article 81 of the Code. It provides that "Any person or persons, or corporation, claiming to be aggrieved because of an assessment made by county commissioners of any one of the counties of this State, or because the failure to reduce or abate an existing assessment, may, by petition, appeal to the Circuit Court of the county in which said property is situated." It then goes on to provide that all of the directions set forth in section 17 of that article relating to the taking, prosecution and determination of the appeals thereby authorized to the Baltimore City Court shall be applicable to the proceedings in the Circuit Courts for the counties. Section 17 of Article 81 provided for an appeal to the Baltimore City Court by anyone aggrieved by an assessment of the Appeal Tax Court of Baltimore City, or because of the failure to reduce or abate an existing assessment, and the intention of the legislature evidently was to extend the same provisions to the counties, which theretofore had been confined to Baltimore City. But the very language of the statute shows that the failure to reduce or abate at which a party might feel aggrieved was "the failure to reduce or abate an *existing* assessment"—not some assessment which was in process of being made, as this was until completed by the Board of Control and Review. The other ground for appeal to the Court was "because of an assessment made *by county commissioners* of any of the counties of this State," and what we have already said is sufficient to indicate that in our judgment this valuation was not made by the county commissioners, as such, but by the Board of Control and Review, and hence it can not properly be said that this proceeding can be entertained under Chapter 430 of the Acts of 1910.

Section 17A concludes by saying: "None of the provisions of this section shall apply to assessments made under the Act of 1896, Chapter 120." We do not regard that of any particular significance. It certainly was never intended to mean that section 17A was not to be subject to the Act of 1896, Chapter 120, but was to be subject to Chapter 300 of the Acts of 1910, which was intended as a substitute for the Act of 1896, in so far as the general assessments were concerned. Section 1 of Chapter 300 of Acts of 1910 provides that there shall be an entire re-valuation and reassessment, for the purposes of taxation, of all the property, real, personal and mixed, subject to taxation under existing laws, in all the counties of the State except Somerset and Worcester, "and such an entire revaluation and reassessment are hereby ordered and required to be made." As when Chapter 430 was introduced the Act of 1896 was the last general assessment law, it was doubtless supposed to be wisest to expressly except it, but even if the County Commissioners had assessed this property in 1910 or at any time before the new general assessment was completed, by the very terms of the act it would have been required to be revalued and reassessed according to Chapter 300.

Much more might be said, but it seems to be perfectly clear that Chapter 300 was providing for the general assessment of all property in the counties of the State, excepting the two named, and that any assessment made under it was governed by its provisions, and that the assessment, reduction and abatement spoken of in Chapter 430 referred to such only as can properly be made by the County Commissioners from time to time, and not such as assessors and boards of control and review make, when there is a new general assessment.

As we do not regard the ruling on the demurrer in such a case as this a final order from which an appeal can be taken, we will dismiss the appeal.

*Appeal dismissed, the appellant to pay the costs.*