Wright *vs.* Santa Clara Mining Association of Baltimore, *et al.*

---

## JOHN S. WRIGHT *vs.* SANTA CLARA MINING ASSOCIATION OF BALTIMORE, and others.

A person having no interest in the question litigated between the parties, to a suit in equity, and against whom *no relief* is prayed by the bill, is not a *necessary party* to the suit; whatever rights he may have, he can assert in a proceeding to be instituted by himself.

APPEAL from the Circuit Court for Baltimore city.

This appeal was taken from a decree of the court below *(Krebs, J.)* dismissing the bill in this case, filed by the appellant against the appellee, upon the ground, that John B. Gray was not "made a party to the cause, and an opportunity afforded him to be heard in reference to his alleged rights, interests and pretensions, referred to in the bill."

The bill alleges, that articles of association were subscribed by R. J. Walker and others, for the purpose of forming a company to work a quick-silver mine in California. That the Company was called the Santa Clara Mining Association of Baltimore. And that on the 6th of June 1850, said Gray and wife conveyed the land on which the mine was situated to Isaac Tyson Jr. and others, *in trust*, to stand seized and pos-

sessed of the same, for the use of the Association, till it was incorporated, and then to convey the same to the corporation, and its assigns freed from the trust. That Gray signed these articles of association, and under the same certificates of stock therein were issued to him and the other members of the Association, which were transferable, and some of them in fact were transferred by Gray and others to third persons. That an adversary title to the lands and mines so conveyed by Gray, was asserted by persons residing in California, and another association called the Gaudalupe Mining Company, was formed for the purpose of working the same mines, and had possession thereof, and had also obtained a confirmation of their title by the Board of Land Commissioners, established by the United States in California. That the said Santa Clara Association did not work these mines at any time, and had raised no means for that object, and that owing to this fact and the difficulties surrounding the title, it was agreed by these two rival Associations, that it was for the interests of both to compromise their contention and consolidate into one company. That the Legislature of Maryland, had, by the act of 1852, ch. 317, incorporated the said Santa Clara Company, but the charter thereof was not accepted by the same, owing to said disputes and difficulties of title. That on the 19th of July 1855, the proposed compromise and consolidation was made; and by the agreement thereof the sum of $333,333.33, in stock of the new Association, which adopted the name of "The Santa Clara Mining Association of Baltimore," and which also at once accepted the charter aforesaid, was apportioned to John Hanson Thomas, John M. Gordon and Robert J. Walker, as trustees for the shareholders of the original Santa Clara Mining Association of Baltimore, as heretofore existing. That the complainant John S. Wright, became the owner, by purchase of several of the original certificates of said original Santa Clara Association, and being desirous of converting them into the stock of the consolidated and chartered company, according to the terms of the aforesaid consolidation, he is entitled to have a specific execution thereof, but that Isaac Tyson, Jr., and others, the surviving trustees named in

the aforesaid deed of trust from Gray and wife, refuse and omit to make the necessary deeds of transfer and conveyance to said corporation, as provided in said deed, and as they ought to do according to the effect and meaning of the articles of association, subscribed by them and by said Gray and wife, and the resolutions and consolidation and proceedings before stated, and that John Hanson Thomas and John M. Gordon, who are named in said articles of compromise and consolidation, as co-trustees with said Walker, to receive and hold the stock in said corporation, for the benefit of the shareholders in said unincorporated Association, do also now refuse and omit to unite with Walker, in receiving and endorsing said stock, and making the necessary subdivision and apportionment thereof, among the parties respectively entitled, although they have assumed the said trust. That the trustees in said deed of trust, as well as said Gordon and Thomas, and all other shareholders except said Gray, are personally willing and desirous to ratify and perfect the articles of consolidation, but that they, the said trustees, are restrained from so doing by *caveats* and threats from said Gray, whose pretensions the bill charges are idle and unfounded, and ought not to be regarded by said trustees. The bill then prays, that the aforesaid compromise and consolidation may be decreed to be specifically executed, and all necessary transfers of title made, and that the stock coming to the shareholders of said unincorporated association, may be allotted to them in their respective proportion of stock in said corporation, and especially that the surviving trustees named in the aforesaid deed of trust, may be decreed to convey to said corporation the legal title in them vested by said deed, and for general relief.

To this bill Thomas, Gordon and the surviving trustees in the deed from Gray, and the incorporated Santa Clara Mining Association of Baltimore, were made defendants. The exhibits filed with the bill, show that the original articles of association, formed under and in pursuance of said deed of trust, and signed by Gray and wife, provided that the property conveyed by the deed should remain vested in the trustees therein named and the survivors of them, subject to the control and direction of the shareholders of the Association, by a vote of at

least two-thirds of the whole number of shares in the affirmative, and that the business of the Association, should be managed by a board of directors, who, or a majority of them, "shall have power with the sanction of a vote of two-thirds of the whole number of shares, to sell any of the lands or mineral rights of the Association, or to purchase other mineral rights and lands, or, if deemed necessary, increase their capital stock," and that the compromise and consolidation referred to in the bill, was made and agreed to by a vote of more than two-thirds of the shareholders of the original Association, Gray, however, objecting thereto, and that by the terms of the consolidation, the surviving trustees in this deed of trust, and Thomas and Gordon, bound themselves to do what this bill requires of them.

The answer of Thomas, Gordon, and the surviving trustees in the deed of trust, admit most of the allegations of the bill, but say that after receiving, in October 1855, from the attorney of John B. Gray, a notice or caution not to transfer as trustees any of the property, the respondents Gordon and Thomas, declined to receive and distribute as trustees any more of said stock of the consolidated or incorporated company, wishing the direction and protection of a court of competent jurisdiction in the execution of their duties as trustees, whether in conveying the premises or in receiving and distributing the new stock. These respondents are personally willing as shareholders in the said unincorporated company, to ratify and perfect the articles of consolidation, but, as trustees, are restrained from so doing by the caution aforesaid of Gray, and by the desire to act under the instruction of a court of chancery for their protection, being unwilling, without such direction, to receive and distribute certificates of stock, representing property and mineral rights of great supposed value, (the title to a part of which is disputed by Gray,) which certificates will become subject to purchase and sale, and be distributed among the public. These respondents further state, that Gray, who is stated in the bill to have objected to the transfer of the property by the trustees, is not made a party defendant therein, and since the filing of this bill, said Gray and wife have filed their bill in the

Circuit Court of the United States, against the said trustee sand others, praying among other things that the consolidation or union of the 19th of July 1855, and any conveyance from the Association to the corporation formed under this union, may be declared null and void, and that the incorporated company may be restrained by injunction, from issuing any stock representing any interest in the property conveyed by Gray and wife to said trustees, and that the latter be restrained from conveying said property to the incorporated company. That upon notice to the trustees and co-defendants, the court refused to grant said injunction as prayed, and were of opinion that the act of consolidation ought not to be disturbed, and that the same was legal to all intents, and that on demurrer filed, the court would dismiss the bill.

The case was submitted on bill, answer and exhibits, and from the decree dismissing the bill passed as before stated, the complainant appealed.

The cause was argued before LE GRAND, C. J., TUCK and BARTOL, J.

*Robert J. Brent* and *Henry May* for the appellant, argued that the complainant was not bound to make Gray a defendant:

1st. Because he has conveyed all his interests to the trustees Tyson and others, by the deed of the 6th of June 1850, and the articles of Association. He has no other rights than as a stockholder, and every stockholder may equally claim to be made defendant, and unless all are included in the case, the bill would be dismissed on the grounds of the decree appealed from. The trustees alone represent the *cestuis que trust*, who are numerous, and have agreed to do simply what the *cestuis que trust* have directed and thus imposed as a duty, and no court of equity will interfere. *Hill on Trustees*, 278, 471.

2nd. Because the trustees Gordon and others, with the consent of the stockholders of the old Santa Clara Mining Company, or a legal majority of them, signed the obligation to

accept and distribute the stock claimed by the complainant, in the chartered company, and thus are bound to fulfil their solemn engagement, on the strength of which the complainant purchased the stock of the old Company because of *its* convertibility into the new.

3rd. Because he is a non-resident, and declines to sue the trustees or enjoin them or make himself a party in this cause.

4th. Because he cannot be affected by the decree prayed for in this bill, as his stock in the old Company cannot be transferred into the stock of the chartered Company, and he cannot be prejudiced, unless he surrenders the same and consents that it be done. It is a hardship upon the complainant, and every other stockholder, to be prevented from enjoying the benefit of this consolidation, because Gray chooses by his mere *fiat* issued from New York, to enjoin the trustees, and in this way practically supersede the appointed judicial tribunals.

5th. Because as the record shows, he has heretofore claimed the aid of the federal court in Maryland to protect his alleged rights, and the same grounds on which he now rests this his *private caveat,* have in the judicial tribunal of his own choice been utterly condemned, and in this condemnation he has acquiesced by forbearing to proceed any further with his case.

It will be thus seen, that so far as Gray is concerned, he did, as far back as 1850, divest himself of all legal title by his deed to Tyson and others, for the benefit of the shareholders in the original Association. He, therefore, has no interest whatever except as a *cestui que trust,* the same as any other stockholder, nor is there the slightest *evidence* in the record, that he still holds a single share of stock in his hands. His rights as *cestui que trust,* are fully represented by making Tyson and others trustees, defendants; but he has no such rights, for the *consolidation* was effected by virtue of *powers* vested in two-thirds of the shareholders, by the articles of Association signed by Gray himself. Having therefore authorised the sale to the consolidated company, he must take it as legally binding on him, and can only claim to come in for the benefits of the consolidation. The whole case stands thus: If Gray has outstanding adversary rights, they cannot be affected by this suit to

which he is no party; if he authorised the trustees to sell and consolidate, then why respect his *caveat?* The equity rule requiring *cestuis que trust* to be made parties does not apply in this case, because, with respect to the duty and trust sought to be now enforced, Gray is not even a *cestui que trust;* the trust of which he was such, was closed by the articles of consolidation, executed under powers granted by him. It is in principle like the case of *Goodson vs. Ellisson,* 3 *Russell,* 583. But the rule as to *parties* in a court of equity, is always in the discretion of the court, *for the purposes of equity,* and where parties are very numerous or difficult to be brought into the case, it will be dispensed with. 2 *Pet.,* 482, *Mandeville vs. Riggs.* 10 *Wheat.,* 166, *Elmendorf vs. Taylor.* 3 *Cranch,* 221, *Milligan vs. Milledge.* And in conclusion we say, that the rule as to parties in suits in equity, has been laid down very concisely by the Supreme Court of the United States, in the case of *Kerr vs. Watts,* 6 *Wheat.,* 559, in these words: "No one need be made a party complainant, in whom there exists no interest, and no one a party defendant from whom nothing is demanded." It is seen by the bill in this case, that *nothing is demanded of Gray.*

No counsel appeared for the appellees.

Le Grand, C. J., delivered the opinion of this court.

We do not discover, on an examination of the record in this case, that John B. Gray has any interest whatever in the question litigated between the parties to this suit, and inasmuch as no relief is prayed against him he was not a necessary party. Whatever rights he may have, he can assert in a proceeding to be instituted by himself. 6 *Wheaton,* 559, *Kerr vs. Watts.* 11 *Maryland, Rep.,* 158, *Crook vs. Brown.*

*Decree reversed and cause remanded.*

(Decided Nov. 2nd, 1858.)