## ISAAC S. ANNAN AND O. A. HORNER *vs.* JAMES T. HAYS.

*Marshalling of Assets—Rights of Subsequent Creditor With Lien on One Fund Against Prior Incumbrancer With Lien on Two Funds—Notice of Subsequent Claim.*

Where a mortgagee has liens for his claim, both on land and chattels, and a subsequent judgment creditor has a lien only on the land of the debtor, if the judgment creditor wishes to have the assets marshalled in his favor, he must give actual notice of his claim to the mortgagee, the mere record of the judgment in such case not being constructive notice. And if, without uotice of the judgment, the mortgagee releases the chattels from his lien, he cannot be deprived of his right to enforce his whole claim against the land.

Appeal from an order of the Circuit Court for Frederick County (McSHERRY, C. J.), ratifying an auditor's account distributing the proceeds of sale of certain mortgaged property.

The cause was argued before BRYAN, FOWLER, BRISCOE, PAGE, ROBERTS, BOYD and RUSSUM, JJ.

*Wm. P. Maulsby* and *Eugene L. Rowe*, for the appellants.

*John C. Motter* and *Vincent Sebold*, for the appellee.

PAGE, J., delivered the opinion of the Court.

This appeal is from the order of the Court below confirming the report of the auditor distributing the proceeds of the sale of certain real estate made under a power of sale contained in a mortgage.

James T. Hays was the holder and owner of two mortgages on the real estate of Joseph Byers; one, a first mortgage to secure a debt of $2,500; another, bearing date the eighth day of June, 1878, junior to the first, to secure

the payment of a promissory note of the same date for $1,050. On the twenty-third day of July, 1894, Byers executed and delivered to Hays a chattel mortgage, as additional security for the payment of the $1,050, due on the above-mentioned promissory note, and also for the further sum of $605.61, due to Hays on another promissory note. It may be observed that the last mentioned sum included an amount of $520.82, due on a judgment against Byers in favor of John C. Motter and Robert Biggs, who had agreed to assign the same with all its rights and liens (none of which were waived), to Hays on receipt from him of the amount due thereon.

The appellants are the holders of three judgments rendered by a justice of the peace against Byers, amounting in the aggregate to $153.06. They were recorded in the office of the Clerk of the Circuit Court of Frederick, on the 30th of August, 1894, and so became liens subsequent to both the Hays mortgages on the realty of Byers; but no executions having ever issued thereon, they constituted no lien on the personalty. On the 12th of March, 1895, Byers, " as agent," to satisfy the claim of Hays of $605.61 (secured only by the chattel mortgage), and also a claim due by him to his wife, advertised and sold the personalty, realizing therefrom about eight hundred dollars. Though the notes at this sale were taken in Hays' name, the proof shows that Hays did not authorize him to act as his agent, or to take the notes in that form, nor did he ratify the sale in any other wise than by accepting notes sufficient in amount to pay the note of $605.61. The residue of the proceeds of sale went as a credit on claims held and owned by Byers' wife.

On the 10th of April, 1895, under the power contained in the mortgage, the mortgagee made sale of the realty. After it had been ratified by the Court, the proceedings were referred to the auditor, who after allowing costs and expenses of sale, awarded the balance to the payment of the first and second mortgages, and the residue in part payment of the judgments of the appellants.

The ground of objection to this disposition of the fund is, that Hays having two liens for the payment of the promissory note for $1,050, one on the real estate, the other on the personalty; and the appellant having a lien only on the land, the familiar doctrine of marshalling applies ; and, therefore, Hays having acted in disregard of duty, by permitting the chattels to be diverted from their liability to the payment of his debt, can now take nothing on account of his second mortgage from the realty, until he has credited the amount derived from the sales of the chattels.

Without pausing to inquire whether there may be found in the special facts of this case more than one reply to this contention, we deem it necessary to consider but one phase of the questions presented by the record.

The doctrine of marshalling of assets is founded upon those considerations of natural justice, whereby one is not permitted from wantonness or caprice or rashness to do an injury to another, but is required to so use his own rights, as not to injure, if possible, the rights of another. The equity exists also against the debtor, so that he shall not retain the singly charged estate ; but as between him and the primary creditor there is nothing in the principles of natural or conventional justice, that ought to restrain the latter from resorting to any property, of which the debtor may be possessed. As long as both funds are in existence the principle of marshalling may in proper cases be enforced by means of substitution ; but when the singly charged fund has been put beyond the reach of the primary creditor by his own act, committed in wilful disregard of the rights of the other creditor, the former ought not to be permitted to take anything from the other fund, until the other creditor has had made good to him the loss he has incurred by the destruction of the singly charged fund. But this ensues from the obligation of the primary creditor not to . wilfully do any act that will injure any one else, and therefore, if he act without knowledge of the rights of the other creditor, in good faith and with proper intention, there can-

not result therefrom anything that will defeat his right to resort to the remaining fund.    In *Cheeseborough* v. *Millard*, 1 John. Ch. 414, CHANCELLOR KENT said: "As this rule of substitution rests upon the basis of mere equity and benevolence, the creditor who has thus disabled himself from making it is not to be injured thereby, provided he acted without knowledge of the other's rights, and with good faith and just intentions, which is all that equity in such case requires."

The mortgagee, Hays, in the collection of his demands, was not required to shape his action with reference to the claims of the subsequent judgment creditors, unless he had notice of the existence of such judgments.    If he knew of them, and yet wilfully acted so as to occasion loss to the appellants in disregard of their rights, he ought to bear such loss rather than impose upon others the consequences of his own wrong ; but if he acted without knowledge of their rights, it would be contrary to every principle of equity and common fairness to deprive him in consequence thereof of any rights he may have to resort to the remaining fund. These views, so consonant with sound reasoning and common sense, are amply sustained by authority.    *Sheldon on Subrogation*, sec. 81; *George* v. *Wood*, 9 Allen, 80 ; *Ross* v. *Duggan*, 5 Colo. 85; *Taylor's Extrs.* v. *Maris*, 5 Rawle, 50 ; *Uniontown B. & L. Ass. Appeal*, 92 Pa. St. 200; *Vanorden* v. *Johnson*, 14 N. J. Eq. 377.

We have carefully examined the record, and find no proof that, up to the time of the sale of the personalty, Hays had any knowledge of the existence of the appellant's judgments. It was contended in argument that as the judgments were of record, Hays should be charged with constructive notice. But it is difficult to perceive why the record of a subsequent magistrate's judgment should be tantamount to actual notice to a creditor holding a prior lien.    Unless there was a duty on the part of Hays to search the records for subsequent incumbrances, why should he be charged with actual notice of what might there be found ?    He had no interest in the

appellant's judgments, and was not therefore bound to search for them.    In *Cheeseborough* v. *Millard,* above cited, where it was contended the mortgagees were chargeable with notice of subsequently recorded judgments, CHANCELLOR KENT said : " They were not bound to search for the judgment, and the record was no constructive notice to them." *Horning Extrs. Appeal,* 90 Pa. St. 392 ; *Stuyvesant* v. *Hone,* 1 Sand. Ch. 419 ; *Taylor's Ex.* v. *Maris (supra) ; Hosmer* v. *Campbell,* 98 Ill. 578 ; *Birnie* v. *Main,* 29 Ark. 591; *George* v. *Wood (supra).*

*Order affirmed with costs.*

(Decided April 1st, 1897).