# CIRCUIT COURT OF BALTIMORE CITY.

Filed November 29, 1909.

## IN THE MATTER OF GEORGE P. McRAE, LUNATIC.

*William C. Smith* for Mollie McRae.
*A. S. J. Owens* for the State.

HEUISLER, J.—

A petition was duly filed in the above entitled case on November 13, 1909, by a proper party in interest, alleging that for more than a year past and at the time of the filing of the said petition, George P. McRae, a resident of the City of Baltimore, had been and was of unsound mind, and a lunatic, without lucid intervals, and not capable of the government of himself or the management of his business.

The petition prayed for the issuance of a commission de lunatico inquirendo to the sheriff of Baltimore - City and for the appointment of a committee for his person and estate. The writ of subpoena was asked directed against the alleged lunatic, and an order of court was prayed excusing his personal attendance before the jury of inquisition.

On the same day the usual ex parte order for the commission and subpoena was issued as prayed. The proceeding was the usual and formal one under the statutory provisions found in the Md. Code (1904), Art. 16, Ch. 107 et seq., the first section reading as follows:

"The court (equity) shall have full power and authority in all cases to superintend and direct the affairs of persons non compos mentis, both as to the care of their persons and the management of their estates, and may appoint a committee or a trustee or trustees for such persons, and may make such orders and decrees respecting their persons and estates as to the court may seem proper."

Before the execution of the commission and on the 15th day of November, 1909, a petition was filed by the State of Maryland through the State's Attorney for Baltimore City, in this proceeding, alleging in substance that on the 6th day of July, 1909, the Grand Jury of the State of Maryland in and for the body of the City of Baltimore had returned to the Criminal Court of Baltimore seven true bills or indictments against a certain George P. McRae, charging him with larceny and embezzlement: that all of said indictments remained untried and undisposed of on the docket of the said Criminal Court; that the said George P. McRae referred to in the ex parte proceeding aforesaid was the same George P. McRae against whom the said indictments were pending; that the State of Maryland cannot legally try the said George P. McRae upon any or all of the said indictments if he be (as alleged), in fact a lunatic without lucid intervals, and that the State is ready to proceed with the trial of the said cases against the said George P. McRae.

The State of Maryland thereupon petitioned the court to intervene in this proceeding, and that it be "permitted to engage two alienists for the purpose of examining into the mental condition of the said George P. McRae, and that the State have the right to adduce witnesses before the said Sheriff's jury touching the question of the sanity of the said George P. McRae, with the right to appear at said Sheriff's jury and inquest and cross-examine the witnesses who may appear and testify before said inquest."

Following this petition an order nisi was duly passed authorizing such intervention, and further directing the sheriff of Baltimore City to suspend the execution of the writ de lunatico until the further order of the court.

On the 16th day of November, 1909, the petitioner in the above case de-

murred to the whole of the said petition filed by the State of Maryland, alleging as ground of said demurrer, First, "that the State is neither a necessary nor proper party in these proceedings," and Second, "for other reasons to be shown at the hearing of the demurrer."

At the hearing of the demurrer there was no discussion as to the necessity of the State intervening (the necessity of such proceeding being perhaps the privilege of the State officials) and there was no urging of any special reason under the second ground of the demurrer, and the argument was confined to the one objection that the State of Maryland was not a proper party to the proceedings.

It was urged by counsel for the original petitioner, first, that the proceeding was ex parte; was a proceeding in personam and not in rem, and that the State of Maryland having no interest in the person and basing its claim entirely upon the existence of the pending indictments could not be allowed to intervene; and secondly, that, notwithstanding the fact that there was provision made under Article 59 of the Maryland Code (1904), Secs. 3, 4 to 9, inclusive, to determine the insanity vel non of any person under indictment for a crime or misdemeanor, that the "old Equity Jurisdiction under which his petition was proceeding cannot be set aside by subsequent statutes conferring jurisdiction upon the Criminal Court."

This second contention, as an apparent conflict of jurisdiction in view of the law of this State, has no present bearing upon the question under examination. The authority of the Chancery Court in Maryland to take charge of the estates and persons of lunatics is derived from the Act of 1785, Chap. 72, Sec. 6, the provisions of which are preserved in almost the same words in Article 16, Sec. 107, of the now existing Code of Maryland.

This Act of 1785, Ch. 72, contains no express ouster of the jurisdiction of the courts of common law—and hence they have concurrent jurisdiction over the rights of lunatics with the court of chancery—because of this failure of express ouster of jurisdiction.

Tomlinson vs. Devore, 1 Gill 345.

If this ex parte proceeding had not been instituted, and upon the trial of the indictments the insanity of the defendant had been interposed as a defence, the State would have been compelled to proceed under the provisions of Art. 59 of the Code of 1904 and the sections thereof,—but now that a concurrent jurisdiction is invoked in behalf of the party under indictment upon an inquiry as to his lunacy the State is justified in following that inquiry and thus avoiding circuity of action and delay if it is a proper party to intervene.

Intervention is the process by which in a pending suit a stranger to the litigation claiming an interest therein is permitted to interpose and assert his claim. No one can be allowed to intervene unless he has an interest in the subject matter or object of the suit.

Miller's Equity, folios 96-97.

"The fundamental notion is that the person ultimately and really interested in the result of a litigation, the person who will be entitled to the final benefit of the recovery, may at any time, at any stage, intervene and be made a party so that the whole possible controversy shall be ended in one action and by a single judgment."

Pomeroy on Remedies, Section 411.

The words "object of the suit," and "result of the litigation," as used by the learned authors above quoted, when applied to the matter under examination, have a most distinct meaning, for both the object of the suit and the result of the litigation can mean nothing more or less than the insanity vel non of George P. McRae, and in the answer to this inquiry the State is most vitally interested, even if, as alleged as demurrer, it has no right to intervene in this proceeding."

It is a fundamental principle in all civilized countries that the defense of insanity when established shall furnish to the accused not only a protection against conviction, but a sufficient reason why he should not be tried or sentenced."

People vs. McIlvaine, 125 N. Y. 600.

This expresses a humane principle and provision of the law, and the courts will always incline to give it full and free effect, but they are not justified in sanctioning a proceeding which may arrest and nullify the regular and or-

derly administration of the criminal law, and delay and perhaps defeat a trial under indictment, by a refusal to permit the intervention of the State, if that be legally proper—and if ample provision can be made for the protection of all the rights of the party against whom its charge is made. Now is the State a proper party in this proceeding? The rule as to parties in equity is always in the discretion of the court for the purposes of equity. "No one need be made a party complainant in whom there exists no interest—and no one a party defendant from whom nothing is demanded."

Kerr vs. Watts, 6 Wheat (U. S.) 559.

Wright vs. Santa Clara Assn., 12 Md. 443.

Beyond this broad discretionary power under which there would seem to be most complete propriety in permitting the intervention sought by the State for "the purposes of equity" is the legal fact that the proceeding is not in personam, as urged by counsel, but is in the nature of a proceeding in rem."

In a suit in personam it "is true that strangers have no such legal interest as would entitle them to intervene, but in a suit in rem persons, not parties, may have such interest, and may, therefore, be allowed to intervene."

"An inquisition of lunacy may be considered to be in the nature of a proceeding in rem since it is executed by the direction of the Chancellor (to whom by special authority of the king —the custody of idiots and lunatics is entrusted) to inquire into the state of the party's mind."

Starkie Ev., Vol. 1, fol 258.

The proceedings in an inquisition de lunatico are in the nature of proceedings in rem, and are designed to fix the status of the person proceeded against.

Leggatt vs. Clark, 111 Mass. 308.

In a suit in rem a person having a claim upon or other interest in the res (and in this inquiry the res is the fact of insanity vel non, and the status of McRae) may intervene."

Coleman vs. Martin, C. Blatchf., 119-120.

The "Case of Covenhoven," I N. J. Eq. 19, was urged by counsel of orig-inal petitioner as being somewhat conclusive of his contention, but the following language from the opinion in that case would seem to emphasize equity and justness of the State contention.

A stranger cannot sue out a commission in the nature of a writ de lunatico inquirendo, nor can he make himself a party to it by appplication to this court: he has no right to interfere in a proceeding of this nature.

The party who seeks to quash the inquisition or traverse the finding of the jury, should have an actual interest, legal or equitable—which would be endangered by the finding of the jury, and that should be manifested to the court; in such cases the application will be granted.

"Proceedings upon an inquisition of lunacy are ex parte, and although they are not conclusive as to the rights of third persons, yet, when those rights are affected by the inquisition, it is equitable and just that the party aggrieved should have an opportunity of being heard in such mode as may best comport with justice and the rights of all interested."

In the case of Watkins vs. Worthington, 2 Bl. 519, Judge Miller observes that interests of infants, femes covert and persons non compos mentis are always specially attended to when brought before a court of equity; but I have never understood that the course of justice could be arrested or in any manner turned away for their benefit.

Their disabilities always excite sympathy and suggest caution where their interests may be affected, * * * but under no circumstances have they been allowed to pervert any such claims to a special consideration and protection into a means of impairing the rights of others."

In accordance with the above views I have reached the conclusion that the petition of the State of Maryland is not open to the objections raised by the demurrer, and I will accordingly sign an order overruling the demurrer with leave to the original petitioner to further answer or show additional cause within five days from the date hereof why the prayer of the petition of the State of Maryland should not be granted.