# FIDELITY & DEPOSIT COMPANY OF MARYLAND

*vs.*

## DOUGLAS H. THOMAS.

*Sales in bulk: secs. 19, 20 and 21 of Art. 83 of Vol. II as
amended, found in secs. 100, 101, 102 and 103 of Art. 83
of Vol. III; rights of creditors, not limited to
merchandise accounts.*

Sections 19, 20 and 21 of Article 83 of Vol. II of the Code
relating to "sales in bulk" as amended by Chapter 451 of the
Acts of 1912 and Chapter 409 of the Acts of 1914 are found
in sections 100, 101, 102 and 103 of Article 83 of Vol. III of
the Code.                                    pp. 272-273

The "sales in bulk" Act does not limit the rights of creditors
to those only who have claims for merchandise accounts; the
statement required by this Act on the part of the vendor should
include all the creditors not only for merchandise accounts,
but also for borrowed money, promissory notes, rent, clerk
hire, printing and advertising bills, but the Act does not apply
to professional services of an attorney in a suit on a note that
was not a subsisting debt at the time of the sale.          p. 273

*Decided October 30th, 1918.*

Appeal from the Circuit Court of Baltimore City. (STUMP,
J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE,
BURKE, THOMAS, PATTISON, URNER and CONSTABLE, JJ.

*Benjamin A. Stansbury,* for the appellant.

*James R. Brewer* (with a brief by *Venable, Baetjer & Howard*), for the appellees.

BOYD, C. J., delivered the opinion of the Court.

On the 30th day of April, 1914, James F. Clark, trading as Clark and Company, and Lehman and Roth entered into an agreement by which Clark sold to Lehman and Roth all the goods, wares and merchandise and fixtures located in 334 North Charles street, in the City of Baltimore, together with the good will of the business theretofore carried on by Clark, for the sum of $13,000. The amount was payable as follows: $1,024.00 in cash; $3,500 in three notes, two of them being for $1,166.66 and payable respectively in two and four months, and the third being for $1,166.67, payable in four months; and Lehman and Roth agreed to pay all of the merchandise accounts of Clark & Co. up to, but not exceeding the sum of $8,476.00—the agreement providing that if those accounts were in the aggregate less than that sum, the purchasers were to pay Clark the difference, and if more, Clark was to pay the excess. Clark agreed to give them a bond in the penalty of $5,000 with satisfactory surety—the condition being that he would hold them harmless from any loss, damage or liability if the amount of the merchandise accounts exceeded the above sum, and "also to protect the parties of the second part as purchasers of said property bought under this agreement from any liability on any claims due by the said party of the first part to persons or corporations other than the merchandise creditors to be paid by the parties of the second part hereunder."

By a supplementary agreement it was provided that Lehman and Roth should accept a bond without surety, provided that one of the notes payable four months after date be placed in the hands of Douglas H. Thomas as collateral security for the performance by Clark of his obligation under the bond until the maturity of said note, when it should be delivered

272      F. & D. CO. OF MD. vs. THOMAS.

Opinion of the Court.                    [133

to Clark and become payable: provided that Clark "shall not then be in default under said bond and that the said bond shall continue in full force and effect, notwithstanding the maturity or payment of said note."

A bond was given with condition as provided for in the agreement. The purchasers paid the cash, all of the merchandise accounts amounting to $8,476, less a small amount found to be an error, and the notes—the last note being paid to Mr. Thomas by a certified check which was subsequently collected and held by him. Clark furnished Lehman and Roth with a list of the accounts amounting to $8,476. Charles J. Taylor & Co. and O'Neill & Co. had what are admitted to be merchandise accounts against Clark which were not in the list and hence were not paid by Lehman and Roth. The A. S. Abell Company had an account for advertising the business of Clark, and Joshua Horner, Jr., had an account for professional services as attorney. Attachments were issued by those creditors and were laid in the hands of Mr. Thomas, but we do not deem it necessary to discuss them for reasons which will appear later.

Mr. Thomas filed a bill of interpleader after the attachments were issued and a decree was passed requiring the parties to interplead. Answers were filed and testimony taken, which resulted in a decree allowing the costs and the claims of the above parties, excepting that of Joshua Horner, Jr., whose claim has been assigned to the Fidelity and Deposit Company of Maryland, which with leave of Court became a party to this proceeding. This appeal was taken from the last decree.

It is apparent that the parties had in mind the Sales in Bulk Act when the agreement was made, and while the terms of that Act were not wholly complied with, the purchasers undertook to protect themselves against loss by reason of its provisions. That Act as amended will be found in Article 83, sections 100, 101, 102 and 103 of 3rd Volume of Annotated Code. There has been some confusion in the numbering of these sections, but sections 19, 20 and 21 of Article 83

in the 2nd Volume of the Code were amended by the Acts of 1912, Chapter 451, and 1914, Chapter 409, and are now numbered in the 3rd Volume as stated above.

Mr. Lehman testified that the bond was given to protect them from the Act. It is therefore proper that it should be considered in ascertaining the intention of the parties in making the agreement, if it be necessary to go outside of the agreement itself. We do not understand why the witnesses speak as if the agreement only provided for merchandise accounts, as what we have quoted above clearly shows that such was not the case, and the Sales in Bulk Act does not limit the rights of the creditors to those having claims for merchandise accounts.

It requires by section 100 "a written statement under oath, containing the names and addresses of *all the creditors* of said vendor," etc., and by section 101 a notice to *"each of the creditors* of the vendor named in the statement," and if the statement under oath is not first demanded and received from the vendor as provided in section 100 and notice is not given to *"all of the creditors* of the vendor named in such statement," "such purchase, sale or transfer shall, *to any and all subsisting creditors* of the vendor, be void." It would be peculiar if it were otherwise, as most, if not all merchants who do business of any consequence owe debts other than on merchandise accounts, such as promissory notes, rent, clerk hire, etc. It could not be pretended that a merchant who had borrowed money and paid for his merchandise would not be subject to the Sales in Bulk Act, but that one who still owes for the merchandise would be. But there is no room for discussion on the subject, unless we ignore the express provision in the agreement and the bond by which the purchasers were to be protected against claims due by Clark other than merchandise accounts, as well as those.

It therefore becomes immaterial whether the claim of the A. S. Abell Company is or is not a merchandise account. It was a subsisting debt when the agreement was made under which this note was to be held by Mr. Thomas, the proceeds

of which were, of course, to be applied to the payment of the debts due subsisting creditors, if any, not included in the list amounting to $8,476. The attachments were subordinate to the terms of that agreement and as the claim of the A. S. Abell Company was within its terms, it was clearly entitled to participate in the distribution of the proceeds of the note.

The next question is whether the claim of Joshua Horner, Jr., was entitled to any portion of them. The record is not as clear as it might have been as to when the debt of Clark to Horner was contracted. But the answers of O'Neill & Co. and of the A. S. Abell Company distinctly allege that the claim was not a subsisting debt, but was on account of services rendered by him in connection with the sale and transfer of the property.

A judgment was obtained by Horner against Clark on November 4, 1914, on a promissory note. The suit was instituted October 15, 1914, but the date of the note does not appear in the record. The appellant was represented at the hearing by counsel, and there was no attempt to show that the indebtedness existed prior to the sale. The remarks of the Court and of the attorneys at the trial indicate that it was not then a subsisting debt, and it was not contended at the argument that it was. In the absence of anything in the record to show that it was entitled to be distributed, the presumption is in favor of the correctness of the ruling of the Court in excluding it. The other three claims exhaust the fund and there was nothing left for a creditor of Clark not covered by the agreement.

It could not be contended that the fees of an attorney for *such* services would be within the Sales in Bulk Act. It certainly could not have been the intention of the parties that Lehman and Roth should be responsible to Horner for fees for services rendered to Clark by him in that transaction. If it had been, he, who was one of the witnesses to the signature to the agreement and the supplemental agreement would have seen that it was provided for.

It was suggested at the argument by the appellant that there was no default in the bond, but that is manifestly not correct, as is shown by what we have quoted above from the supplemental agreement. The default was in not paying the three creditors whose claims were allowed by the Court below, and, in our opinion, were correctly allowed.

It was also said at the argument that the appellant was a subsisting creditor of Clark for an indebtedness in addition to the Horner claim, but there is nothing whatever in the record as to that and, although the appellant became a party to the case, no suggestion of such indebtedness appears to have been made to the Court.

We have not thought it necessary to speak of the cases referred to by the appellant to the effect that in construing a written contract the Court will look to the language employed, the subject-matter and the surrounding circumstances to ascertain the intention of the parties. In our judgment the language of this contract is too clear to have any doubt about the intention of the parties, but when we see that the object was to avoid loss or liability by reason of there not being a strict compliance with the Sales in Bulk Act, the meaning of the agreement and the intention of the parties are beyond question, and are as stated above.

It follows that the decree appealed from must be affirmed.

*Decree affirmed, the appellant to pay the costs.*