FRANK STERBACK *vs.* WILLIAM E. ROBINSON
ET AL.

*Appeal—Grant of Injunction—Specific Performance—Against Non-Party to Contract—Landlord and Tenant.*

Although Code 1924, art. 5, sec. 31, requires that an answer be filed before an appeal can be taken from an order granting an injunction, the Court of Appeals, in reviewing such an order, is not to consider the allegations or denials in the answer, but is confined to the case as made out by the bill of complaint, and all facts stated therein must be assumed to be true.                                                    p. 27

A contract by the tenant of a farm, to sell all the tomatoes which he grows on the farm during a certain year at a named price, could not be enforced as against the landlord, taking possession of the farm after the tenant's removal, as regards tomatoes grown thereon by the landlord, although the latter had given his approval to the tenant's contract, and actually delivered to plaintiff some tomatoes grown by him on the farm.                                          pp. 28-30

Privity between the parties is essential to the specific performance of a contract.                                        p. 30

There must be mutuality of remedy growing out of a contract, in order that specific performance may be decreed, and if a stranger to the contract cannot have it specifically enforced

against one of the parties thereto, neither can specific per-. formance be enforced against a stranger.                    p. 32

The mere authorization by a landlord to a tenant to dispose of his crop to any particular person by a contract does not make the landlord a party to the contract.                    p. 33

*Decided April 9th, 1925.*

Appeal from the Circuit Court for Harford County, In Equity (HARLAN, J.).

Bill by William E. Robinson and Alphonzo P. Robinson, partners trading as W. E. Robinson & Company, against Frank Sterback and Victor Sterback. From an order granting an injunction as prayed, said Frank Sterback appeals. Reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*John S. Young,* for the appellant.

*Philip H. Close,* with whom was *Thomas H. Robinson* on the brief, for the appellees.

DIGGES, J., delivered the opinion of the Court.

This is an appeal from an order passed by the Circuit Court for Harford County, granting an injunction against the appellant, upon a bill filed by the appellee in that court. The exhibit filed with the bill, which constitutes the contract sought to be specifically enforced, is as follows:

"Exhibit A.
"Growers' and Packers' Tomato Contract.
"This agreement, made this 18th day of Jan., in the year 1924, between W. E. Robinson & Co., party of the first part, hereinafter called packer, and Victor Sterback, party of the second part, hereinafter called grower. The grower agrees to plant and grow for the packer 5 acres of tomatoes more or less at 40c.

per bushel of 60 lbs. to be delivered at the packer's Hickory canning factory in good, ripe, merchantable condition during the season of 1924, and to haul either on spring wagon or provide suitable springs on road wagon to be approved by packer. Grower further agrees to deliver all the merchantable tomatoes he grows on his farm during the year 1924. No tomatoes to be delivered on Saturday without permission from packer.

"Either party to this contract may be released in part or whole if prevented from performing same by providential hindrances beyond their control, by giving immediate notice to the other party. Packer agrees to settle for tomatoes on or before December 1st, 1924.

"Send me....tons....fertilizer.

"Send me....lbs......tomato seed.

"W. E. Robinson & Co., Packer. (O. M. S.)
"Victor Sterback, Grower."

"Dimensions of a standard bushel box: Slats, 24 inches long, two ends and one middle piece cut 10x14 inches. If above size boxes are filled properly they will carry 60 lbs."

Upon the same day as the filing of the bill of complaint and exhibit, the chancellor passed the following order:

"Upon the aforegoing bill of complaint and affidavit, it is ordered this 2nd day of October, in the year 1924, by the Circuit Court for Harford County, as a court of equity, that the writ of injunction issue as prayed in said bill, upon the filing of a bond by or on behalf of the complainants in the penalty of two hundred dollars ($200), with security to be approved by the clerk of this court, but liberty is hereby reserved to the defendants to move for the rescinding of this order and for a dissolution of said injunction at any time after filing his answer, upon giving the plaintiffs five days' previous notice of such motion, and the clerk is hereby directed to annex a copy of this order to the said writ of injunction.

"Wm. H. Harlan."

The defendants named in the original bill were Victor Sterback and Frank Sterback. On October 4th, 1924, the answer of Frank Sterback was filed and at the same time a motion was made to dissolve the injunction. On October 6th, 1924, after leave obtained, the plaintiff amended the bill of complaint by making Marie Sterback, the wife of Frank Sterback, a party defendant. Subsequently, the appellant, Frank Sterback, filed his motion to have the court rescind its order granting leave to the plaintiffs to amend the bill of complaint by making Marie Sterback a party. This motion was overruled. The appellant then obtained leave to withdraw the answer to the original bill of complaint, for the purpose of filing a demurrer. After filing the demurrer, that in turn was withdrawn, the answer refiled to the amended bill of complaint, and appeal taken to this Court.

The sole question presented on this appeal is whether or not the appellees are entitled to an injunction as prayed for in their bill of complaint. In determining the propriety of the action of the lower court in passing the order for injunction, we are confined to the averments of the bill of complaint and exhibits filed therewith. Section 31 of article 5 of the Annotated Code of Maryland 1924, requires that an answer be filed before an appeal can be taken from an order granting an injunction. Under repeated decisions of this Court, we are not to consider the allegations or denials in the answer, but are confined to the case as made out by the bill of complaint, and all facts stated therein must be assumed to be true. *Shannon v. Wright,* 60 Md. 521; *Dittman v. Repp,* 50 Md. 516; *Haight v. Burr,* 19 Md. 133; *Chesapeake Co. v. Mt. Vernon Co.,* 107 Md. 528. We have therefore only to consider and decide whether the facts stated in the bill of complaint justify the passage of the order granting the injunction, from which the appeal is taken.

The facts are few and simple. The appellee is engaged in the business of packing or canning tomatoes, one of their

canning houses being located near Vale Station on the Maryland & Pennsylvania Railroad, and another near the town or village called Hickory, in Harford County, Maryland. The defendants, Frank Sterback and Marie Sterback, are the owners of a farm located near Vale Station, which was being occupied by Victor Sterback, brother of Frank Sterback, as tenant, at the time the contract filed as an exhibit with the bill of complaint was made. This agreement was made on January 18th, 1924, and the parties thereto, as recited in the contract and as indicated by the signatures thereto, were W. E. Robinson & Co., party of the first part, called the "packer," and Victor Sterback, party of the second part, called the "grower." This contract provides that the grower, Victor Sterback, agrees to plant and grow for the packer five acres of tomatoes, more or less, at forty cents per bushel of sixty pounds, to be delivered at the packer's Hickory canning factory in good, ripe and merchantable condition during the season of 1924; the grower further agrees to deliver all the merchantable tomatoes he grows on his farm during the year 1924; no tomatoes to be delivered on Saturday without permission from the packer. The bill further alleges that this contract was made with the authority of Frank Sterback and Marie Sterback, duly given to Victor Sterback to make the same; that shortly after the date of the agreement Victor Sterback removed from the farm and from Harford County, but notwithstanding the departure of Victor, Frank Sterback and Marie Sterback proceeded to plant and grow on the farm the acreage of tomatoes called for by the contract, and when the same began to mature and were ready for delivery, delivered to the appellee one hundred and forty-eight boxes of tomatoes from said acreage; that at the time of the filing of the bill there was on the acreage so planted tomatoes then ready to be delivered to the appellee in furtherance of the contract, but that Frank Sterback and Marie Sterback, his wife, notified the appellees that they would not deliver any more of said tomatoes; that they proposed to haul the same to Balti-

more and sell on the open market at prices then prevailing
for said tomatoes, which prices were largely in excess of
the price agreed upon in the contract; that the appellees
declined to accept the refusal of the defendants to deliver
the tomatoes, or to consent to their being sold elsewhere;
yet notwithstanding said contract and agreement and the
partial performance thereof by the defendants, Frank and
Marie Sterback, the said defendants, in violation of their
contract and in fraud of the rights of the appellees there-
under, persisted in their refusal to make further deliveries
to the appellees and in their determination to haul said toma-
toes to Baltimore and sell them in the open market.    The
bill of complaint further alleges that the complainants would
suffer irreparable loss and injury if the defendants were
not restrained from breaking their contract, and that such
loss could not be measured in money damages; that the com-
plainants were entitled to have said agreement for the sale
and delivery of the tomatoes specifically enforced against
the defendants, and that they were without redress in the
premises unless the defendants were restrained from dis-
posing of said crop of tomatoes and required to deliver them
to the complainants in accordance with the agreement.    The
relief sought was: (a) That the contract be specifically en-
forced; (b) that the defendants, Victor Sterback, Frank
Sterback and Marie Sterback, his wife, their agents, serv-
ants, and employees, be enjoined from disposing of said to-
matoes and required to deliver the same to the complainants
as they ripened, according to the terms of the contract;
(c) and for general relief.

It will be seen that the contract which the complainants
seek to have specifically enforced was in writing, signed by
the parties thereto, and that these parties were the appellee
and Victor Sterback.    This contract was not signed by the
appellant, and cannot be specifically enforced against him
for the simple, yet controlling, reason that there was no
contract with him.    The bill seeks to make Frank Sterback
a party to the contract by the allegation that the contract

made with Victor Sterback, the brother and tenant of Frank Sterback, was made with the authority of the appellant, duly given to his brother and tenant, Victor Sterback. This allegation is wholly insufficient to make the appellant a party to the contract. It is probably true, in most cases of tenants growing tomatoes, that the landlord knows of and approves of the contract made by his tenant for the disposition of the crop grown by the tenant to the packer, but this in itself falls far short of constituting a contract between the packer and the landlord, such as would substitute the landlord in the place of the tenant, the real party to the contract, in case of his failure to perform. The contract here was for the delivery to the appellee of all the tomatoes *grown by Victor Sterback;* yet the complainant seeks not only to hold the appellant, who was not a party to the contract, but to compel him to deliver an entirely different subject matter than that menioned in the contract. It so happened that during the season of 1924 tomatoes were scarce and the price which could be obtained on the open market was larger than forty cents per bushel, the price mentioned in the contract between the appellee and Victor Sterback, and it was to the advantage of the appellee to obtain as many tomatoes at that price as possible. But suppose the reverse had been true; that, instead of tomatoes being worth more than forty cents per bushel on the open market, they could have been bought for twenty cents per bushel. Under such a condition, if the appellant had undertaken to deliver to the appellee all of the tomatoes which he grew, demanding the price named in the contract, and upon refusal had filed a bill for specific performance of that contract, would he not have been promptly met with the defense by the appellee that "our contract was not with you, but with Victor Sterback, and you are not entitled to have specifically performed, for your benefit, a contract to which you were not a party." There is no privity between the parties, which is essential to the specific performance of a contract. *Horwitz v. Kreuzer,* 140 Md. 414.

In 25 *R. C. L.,* 206, it is stated: "Specific performance being an equitable remedy available under certain circumstances to protect rights under contracts, it is implied in every case that there is a contract to be enforced. Many of the cases in which an appeal is made to the equitable powers of the chancery courts to enforce contracts do not turn upon special rules regulating the exercise of those powers, but on the underlying and fundamental questions as to the existence or non-existence of a valid contract." In *Miller's Equity,* page 785, the author, speaking of the requisites of an enforceable contract, in section 679 says: "With respect to the essential ingredients of a contract sought to be specifically enforced, it is said that no rule is better established than that every agreement, to merit the interposition of a court of equity in its favor, must be fair, just, reasonable, *bona fide,* certain in all its parts, mutual, useful, made upon a good or valuable consideration, not merely voluntary, consistent with the general policy of a well regulated society, and free from fraud, circumvention, or surprise, or at least such an agreement must in its effect ultimately tend to produce a just end. If any of these ingredients are wanting, or if that object be not in view, courts of equity will not decree specific performance. It is also said that a contract must be made under circumstances commending it to the favorable consideration of the court and must be such that the performance of it may be conscientiously required." In 6 *R. C. L.,* 881, under the heading "Who may enforce contract," it is said: "A third person cannot maintain an action upon a simple contract merely because he would receive a benefit from its performance. Nor does the fact that he is injured by the breach of the contract entitle him to maintain an action therefor. In other words, the mere fact that the party sought to be charged has broken his contract with the other party thereto, is not of itself sufficient to render him liable for consequential damages to a stranger to that contract. It is the absence of privity that prevents the maintenance by a third person of an action for damage re-

sulting from a breach of the contract. Back of the doctrine of privity appear to be considerations of policy. It is said that to hold that such actions could be maintained would not only lead to endless complications in following out cause and effect, but would restrict and embarrass the right to make contracts by burdening them wtih obligations and liabilities to others which parties would not voluntarily assume." To the same effect see 13 *C. .J.,* sec. 805.

It will be seen from this statement of the law that if the appellee had refused to accept and pay for tomatoes that might have been grown by Victor Sterback under the terms of the contract, the appellant, Frank Sterback, could not have maintained an action for specific performance of that contract, for the reason that there would have been a lack of privity between the appellee and Frank Sterback, even though, as landlord, he might have been benefited by its performance or injured by its non-performance.

There must be mutuality of remedy growing out of the contract, and if a stranger to the contract cannot have it specifically enforced against one of the parties to it, neither can specific performance be enforced against a stranger. Unless the essential ingredient of mutuality is found in the contract, a court of equity will not compel its specific performance. *Miller's Equity,* p. 791, sec. 685; *Kraft v. Egan,* 78 Md. 36; *Atlantic Coal Co. v. Md. Coal Co.,* 62 Md. 135. The agreement of two parties resulting in a contract creates a personal relation between them, and that agreement cannot impose any liability upon a third person. *Brantly on Contracts* (2nd ed.), sec. 111; *Carroll v. Benedictine Society,* 88 Md. 317.

Without prolonging this opinion, it will be seen from what we have said that the allegations in the bill of complaint, together with the contract between the appellee and Victor Sterback, do not create a contract between the appellee and the appellant; the contract being in writing and definitely fixing the parties who were intended to be and were bound thereby. The appellee seeks to hold the appel-

lant liable contrary to the written contract with Victor Sterback by two allegations in the bill; first, that the appellant authorized the making of the contract by Victor Sterback; and second, that he delivered one hundred and forty-eight bushels of tomatoes grown by himself on the same farm upon which Victor Sterback had contracted to grow them. Assuming these allegations to be true, they do not, separately or when taken together, establish a contract between the appellee and the appellant, which is a prerequisite to a decree of specific performance and restraining order. When Victor Sterback left the farm and failed to comply with his contract, if another tenant had gone upon the farm and grown tomatoes on the same land, it could hardly be seriously argued that the appellee would have had a legal right to require the delivery of the tomatoes grown by the new tenant. Yet that is precisely what is attempted to be done here, with the single added allegation that the appellant, Frank Sterback, authorized Victor Sterback, his tenant, to make the contract. It is equally apparent that the mere authorization by a landlord to a tenant to dispose of his crop to any particular person by a contract, does not make the landlord a party to such contract. We find that the chancellor erred in passing the order granting the injunction, and the same must be reversed and the bill dismissed.

*Order reversed and bill of complaint dismissed, with costs to the appellant.*