THE NEWARK TRUST COMPANY *v.*
THE TALBOT BANK OF
EASTON, MARYLAND

[No. 166, September Term, 1957.]

*Decided May 10, 1958.*

*Dissenting opinion filed May 26, 1958.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT and HORNEY, JJ., and BOYLAN, JR., J., Chief Judge of the Fifth Judicial Circuit, specially assigned.

*Robert W. Dallas,* with whom was *Walter W. Claggett* on the brief, for appellant.

No brief and no appearance for appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court for Talbot County, passed on June 28, 1957, directing Sherman Edgell and his wife to execute a release of a duly recorded chattel mortgage executed to them by William M. Blakeney, Jr. and wife, to secure the sum of $5,000. The bill of complaint was filed on July 30, 1956, by the Talbot Bank of Easton against the Edgells for the specific performance of an alleged oral agreement to execute a release, which was admitted in the

answer filed by the Edgells. An agreed statement of facts was filed, in which the parties stipulated that on or about November 23, 1953, the Edgells, who conducted a business under the name of Edgell's Fountain Service, sold the business to the Blakeneys for $10,000. The Talbot Bank loaned the purchasers $5,000 and took a chattel mortgage on the fixtures as security. The Blakeneys paid this amount to the Edgells and gave them a promissory note for the balance, secured by a second mortgage on their residence and a second chattel mortgage on the fixtures. On or about September 8, 1954, the Blakeneys sold the business to John W. Howell and Hubert P. Lord for $9,300. As a result of negotiations between the purchasers, the Blakeneys, the Edgells, and the Talbot Bank, the purchasers agreed to pay, and paid in cash, some $4,300 to the trade creditors of the Blakeneys; the Edgells agreed to release their second chattel mortgage on the fixtures and to rely upon the security of their second mortgage on the Blakeney real estate. On September 16, 1954, the Talbot Bank released its first chattel mortgage on the fixtures and took a new chattel mortgage on the fixtures from Howell and Lord in the sum of $5,000. Through inadvertence or oversight, the Edgells' chattel mortgage was not released of record.

On October 23, 1956, the Talbot Bank filed a petition for leave of court to file an amended bill of complaint, and to make the Newark Trust Company an additional party defendant. Leave was granted. The amended bill alleged that on or about June 27, 1955, the Newark Trust Company, a Delaware corporation, filed a bill of complaint against the Edgells alleging that it had obtained a judgment in the Circuit Court for Talbot County against the Blakeneys on July 23, 1954, in the amount of $2,500, and praying that the lien of its judgment be declared to be superior to the lien of the Edgells' second mortgage on the Blakeneys' real estate, or, in the alternative, that the Edgells be required to resort to the security of their second chattel mortgage on the fixtures before resorting to the security of their second mortgage on the real estate. The amended bill further alleged that a demurrer to the bill of complaint filed by the Newark Trust

Company was sustained, with leave to amend, but the Newark Trust Company did not amend, the Blakeneys' real estate having been sold in a foreclosure proceeding instituted by the first mortgagee, The Liberty Bank, in a proceeding entitled "Charles E. Wheeler, Assignee v. William M. Blakeney, Jr. and Emma M. Blakeney, his wife". The sale resulted in an excess of some $900 over the amount due under the first mortgage, and the Newark Trust Company then filed exceptions to an audit awarding the excess resulting from the sale to the Blakeneys. These exceptions relied upon the principle of marshaling assets, contending that the Edgells, who also filed exceptions to the audit, should be compelled to exhaust their remedy against the fixtures, which was alleged to be the primary security, before claiming the excess under their second mortgage upon the real estate. The amended bill alleged that the audit had not been ratified by the court, and that the exceptions were still pending. In its brief, the appellant concedes that the Chancellor stated he would not rule on the exceptions until the status of the chattel mortgage was determined in the instant case.

A copy of the amended bill was served upon the Newark Trust Company, and it filed a demurrer on the ground that it was not a necessary or proper party. The demurrer was sustained, whereupon a second amended bill was filed, and a demurrer filed by the Newark Trust Company on the same ground was overruled. Newark then filed an answer setting forth that it was not a party to, and had no knowledge of, any of the transactions referred to in the original bill which took place after its judgment was obtained. It admitted the allegations as to its bill of complaint against the Edgells, which, it alleged, became moot on account of the foreclosure proceeding, and admitted the allegations as to the exceptions filed to the audit in the foreclosure case. The Edgells answered, admitting the allegations of the second amended bill, and consenting to the entry of such decree as might be just and proper. There was a further stipulation of facts, and the matter was set for hearing. Through its counsel, Newark informed the court that it did not desire to be present to cross-examine witnesses produced by the other parties, but

rested its case solely on the court's adverse ruling on its demurrer to the second amended bill.

The first question presented is whether Newark, the appellant, was a necessary or proper party. Of course, the appeal from the final decree brings up the correctness of the ruling on demurrer. Rule 809, Maryland Rules; *Kikas v. Baltimore County,* 200 Md. 360, 363. See also Rule 373 c and *Buckner v. Jones,* 157 Md. 239, 248. Any right which Newark might have to insist upon marshaling of assets in the foreclosure proceeding, and we express no opinion on that point, depends upon the continued existence of the lien of the second chattel mortgage held by the Edgells. The release of the first chattel mortgage by the Talbot Bank, without a release by the Edgells, made the Edgells' lien on the fixtures superior to that of the Talbot Bank from Howell and Lord. The release sought by the second amended bill would have the effect of relegating the Edgells to their claim against the excess proceeds of sale in the foreclosure proceeding, and destroy the whole basis for the point as to marshaling raised by Newark in the foreclosure proceeding.

Rule 313 d 1 of the Maryland Rules provides that "Separate claims involving different plaintiffs or defendants or both may be joined in one action whenever any substantial question of law or fact common to all the claims will arise in the action or for any other reason the claims may conveniently be disposed of in the same proceeding; the claims joined may be joint, several, or in the alternative, as to plaintiffs or defendants or both." Rule 313 d 3 provides: "Any person may be joined as a defendant against whom any relief is demanded on any claim, and he need not be interested in defending against the other claims or all the relief demanded." We think the claim of Newark in the foreclosure proceeding, the basis for which will disappear if the action of the Chancellor in the instant case is sustained, can be conveniently disposed of in the instant case. It is true that no specific relief is sought against Newark. Since it was not a party to the contract to release, we may assume it could not be required to perform the contract because of the lack of privity. Cf. *Worthington v. Lee,* 61 Md. 530; *Lanford v. Moore,* 145

Md. 420, 423; *Sterback v. Robinson,* 148 Md. 24 and *Clarke v. Brunk,* 189 Md. 353. But it does not follow that it might not be at least a proper party because of its interest in the outcome. Specific action against it would not be necessary to a decree of specific performance. *Parks v. Welch,* 174 Md. 548, 551. Having notice of the proceeding and an opportunity to be heard, it would be bound by the adjudication regardless of its actual participation. Cf. *Reddick v. State,* 213 Md. 18, 30.

The appellant asserted below, and asserts here, a pecuniary interest in the continuance of the lien whose release is sought. It is stated in *Pomeroy, Equity Jurisprudence* (5th ed.) sec. 114, that "all persons who are so interested, although indirectly, in the subject-matter and the relief granted, that their rights or duties might be affected by the decree, although no substantial recovery can be obtained either for or against them, shall be made parties to the suit; * * *." To the same effect, see also *Pomeroy, Specific Performance of Contracts,* (3d ed.) sec. 483, cited with approval in *Buckner v. Jones, supra* (p. 246) and *Keigwin, Cases in Equity Pleading* (2d Ed.) p. 26. On general equitable principles, such as the avoidance of a multiplicity of suits and the convenience of settling all controversies in one proceeding, we think the joinder was proper.

The appellant relies heavily upon the statement in *Miller, Equity Procedure,* sec. 64, that "In cases of specific performance the general rule is that only those persons are proper parties who are parties to the contract or those who have been substituted in their place, as executors or heirs." No doubt that is a correct statement of the law as applicable to a case involving a contract for the sale of land, where the courts are concerned with privity of title. But equity jurisdiction is not limited to cases of that character. "A court of equity will coerce the execution of a written contract which the parol evidence has shown was agreed upon", even though it has no relation to real estate. *Insurance Co. v. Ryland,* 69 Md. 437, 446. Cf. *Alexander et al. v. Ghiselin et al.,* 5 Gill 138, 182. The appellant in the instant case asserts a pecuniary interest in the maintenance of the lien which the appellee

sought to have released. The substantial question in the case would seem to be not whether the appellant is a necessary or proper party, but whether it stands in any better position than the Edgells to insist upon the maintenance of the lien.

If we assume, without deciding, that the appellant properly raised below any question other than the propriety of its joinder, we think the decision of the Chancellor was correct. The appellant does not contend that the contract to release was not made upon a full and adequate consideration, but argues that it should not be enforced as a matter of public policy, because it was in the nature of a secret dealing between creditors, changing their status and priorities, to the detriment of a judgment creditor. We think the argument is without merit. In agreeing to release their chattel mortgage, in order that a sale of the business might be effected, neither the Edgells nor the Talbot Bank were charged with notice of Newark's judgment, which was a lien upon the real estate of the Blakeneys but not upon the fixtures. There is no evidence that they had actual notice of the judgment at the time of the agreement or that they did not act in good faith. Hence, there was nothing inequitable in the agreement, and if it had been performed when agreed, the judgment creditor would have had no just ground of complaint. *Annan v. Hays,* 85 Md. 505, 507, *et seq.* Since equity regards that as done which ought to have been done, the decree enforcing the agreement was proper, even though at that time the claim of a right to marshal had been asserted. Cf. *Hammond v. Lyon Realty Co.,* 163 Md. 442, 475.

*Decree affirmed, with costs.*

BOYLAN, Chief Judge of the Fifth Judicial Circuit, specially assigned, filed the following dissenting opinion:

I cannot concur in the Court's opinion and I feel the reasons for dissenting should be briefly stated.

I feel that in cases of specific performance it is only necessary to make those persons parties who were parties or privies to the contract. *Miller, Equity Procedure,* sec. 64; *Crook v. Brown,* 11 Md. 158; 81 *C. J. S.* sec. 118 (b). In the

*Crook* case, the Court stated: "There is a rule, however, applicable here, about which there can be no dispute, and that is, that a person ought not to be made a defendant against whom no decree can be passed." (Page 172.) And in the case of *Wright v. Santa Clara Ass'n*, 12 Md. 443, Judge Le-Grand, speaking for the Court, said: "We do not discover, on an examination of the record in this case, that John B. Gray has any interest whatever in the question litigated between the parties to this suit, and inasmuch as no relief is prayed against him he was not a necessary party." (Page 449.) *Kerr v. Watts*, 6 *Wheat.* 550, 559, 5 L. Ed. 328; *Lanford v. Moore*, 145 Md. 420, 423, 125 A. 686, 688.

The decree of the Chancellor did nothing more than require the Edgells to release their chattel mortgage. The Newark Trust Company was not required by the decree to do anything or to refrain from doing anything. As no decree was passed against the Newark Trust Company it has no standing to contest the decree. *French v. Shoemaker*, 81 U. S. 314, 20 L. Ed. 852; *Preston v. Poe*, 116 Md. 1, 81 A. 178; *In re Buckler Trusts*, 144 Md. 424, 125 A. 177.

The decree of the lower Court did not settle any dispute between the Newark Trust Company and the Edgells concerning the marshaling of assets (some $900.00 remaining in the hands of Charles E. Wheeler, Assignee, in No. 3411 Chancery, which proceedings are not before this Court), and I do not see how the affirmance by this Court of the decree of the Chancellor has determined the question.

Prior to the institution of the proceedings for specific performance, which is the case now before this Court, the Newark Trust Company instituted an action against the Edgells (No. 3393 Chancery) praying the mortgage of the Edgells on the Blakeney real estate be determined to be an inferior lien to the lien of the Newark Trust Company under its judgment. The question was not determined because the proceedings were abandoned upon the failure of the Newark Trust Company to amend after a demurrer had been sustained. Upon the failure to amend the bill could have been dismissed. *McNiece v. Eliason*, 78 Md. 168, 175, 27 A. 940; *Alley v. Nott*, 111 U. S. 472, 475, 4 S. Ct. 495, 28 L. Ed.

491. The ruling of the Chancellor is not before the Court, but his action in sustaining the demurrer could have been based upon the fact that the common debtor was an indispensable party defendant. 55 *C. J. S. Marshaling*, sec. 24, page 977; *Steele Lumber Co. v. Laurens Lumber Co.*, 98 Ga. 329, 24 S. E. 755. In the opinion of the Court it is stated: "Any right which Newark might have to insist upon marshaling of assets in the foreclosure proceeding, and we express no opinion on that point, depends upon the continued existence of the lien of the second chattel mortgage held by the Edgells." I do not believe that that statement, as applied to the facts in this case, is correct. In 55 *C. J. S. Marshaling*, sec. 11, at page 970, the text reads: "The release of one of his securities by the paramount creditor operates to postpone his claim only to the extent of the value of the property released; in other words, the release of the singly charged fund operates pro tanto as a release of the doubly charged fund from the lien of the paramount encumbrance, if the circumstances are such as to make that course just, and if the releasing creditor acts with full knowledge of the facts."

The opinion of the Court makes reference to "trade" creditors. The Court apparently presumed that the sale to Howell and Lord was done in compliance with the sales in bulk act (Article 83, sec. 97). As I read that section the vendor must give to the purchaser a written statement of *all* of the creditors of the vendor. I do not understand that the vendor must give only a statement of his "trade" creditors. The Sales in Bulk Act does not limit the rights of creditors to those who have claims for merchandise accounts. *Fidelity & Deposit Co. v. Thomas*, 133 Md. 270, 105 A. 174. By the use of the word "trade" creditors I am apprehensive that some confusion might arise.

There is one other matter that occurs to me as not authorized by our practice or by law and that is the filing of the "further stipulation of fact." It was considered by the Chancellor and also by the Court of Appeals. The Newark Trust Company informed the Court that it did not desire to be present to cross-examine witnesses produced by the other

party but rested *its* case solely on the Court's adverse ruling on its demurrer to the second amended bill. Such a statement of counsel would not authorize, in my judgment, the remaining parties to stipulate facts, but would require them to produce witnesses to testify concerning the facts. An agreed statement of facts must be agreed to by *all* the parties. *United States Trust Co. v. New Mexico,* 183 U. S. 535, 22 S. Ct. 172, 46 L. Ed. 315; *Reddick v. Pulaski County,* 14 Ind. App. 598, 41 N. E. 834, 43 N. E. 238.

It is my judgment that the demurrer to the second amended bill of complaint should have been sustained. In the second place, I do not find that the Newark Trust Company is bound by the decree and they had no right to appeal from the decree of the Chancellor.